Good morning, everyone. The first case called this morning is case number 121755, People v. Staake, Agenda No. 9. Counsel, you're ready. You may proceed. May it please the Court, Counsel. I'm Amanda Kimmel with the Office of State Appeal Center here on behalf of Mr. Garrett Staake. Mr. Staake had a trial by ambush when the State changed the charges in theory of the case four times prior to and during trial. Mr. Staake's conviction must be reversed, and the appellate court erred in holding otherwise. This case demonstrates how and why the speedy trial statute and the compulsory jointer statute work together to protect a defendant from trial by ambush. Ultimately, this comes down to a question of whether first-degree murder is a new and additional charge to second-degree murder. The answer is yes for two reasons. First-degree murder created a new burden on Mr. Staake of having to potentially prove a mitigating factor. And the second reason is that first-degree murder charge created a more severe potential penalty than second-degree murder. To begin a discussion of the unusual facts of this case are relevant. The State originally charged Mr. Staake with second-degree murder. Then, 150 days later, approximately one month before trial, the State changed the charge to first-degree murder. At that time, both defense counsel and the trial court expressed surprise that this was occurring just a month before trial. Again, 35 days later, the State changed the theory of first-degree murder that was charged and proceeded to trial just on that last amended complaint. At the beginning of trial, defense counsel actually requested a continuance to further prepare because of the change in charges, and that was denied by the trial court. The case proceeded, and after the close of evidence during the jury instruction conference, the State, out of the blue, requested a second-degree murder instruction. And that was on a different theory of second-degree murder than had previously been pled. And I think that defense counsel's objections to that second-degree murder instruction really laid clear that this was a trial-by-ambush. Defense counsel described it as the fourth notice of what this man had to defend against. Defense counsel also stated that if they had been aware that they were defending against both first- and second-degree murder, they would have catered to a second-degree murder case but did not do so because the State had dismissed that second-degree murder charge. Ultimately, Mr. Stotke was found guilty of second-degree murder, and the State was constantly moving the goalposts on Mr. Stotke. He was allowed to circumvent both the speedy trial statute and the compulsory joinder statute to repeatedly ambush him. These two interrelated statutes work together under the Williams rule to actually create more protection for a defendant. On the ambush issue, counsel, it does appear right that the defendant's trial strategy from the beginning was to simply pursue self-defense, right? Yes. Does that have any import here? To the compulsory joinder analysis, no, because first-degree murder is a new and additional charge. So the error that occurred here occurred 150 days after the second-degree murder charge was filed, when they filed first-degree murder. Ms. Kimball, with regard to that, how could it be error if the defendant didn't raise that at trial or object? Well, although they did not object on speedy trial grounds, defense counsel objected. What they did is file an objection to the amended complaint and also asked for a continuance to further repair. So then that was in addition to the fact that they didn't even object to the speedy trial? They did not object to speedy trial, which is why we do raise this issue under ineffective assistance of counsel as well as pronged to claim error, because it was not raised. But defense counsel did object to the changing of charges and did express surprise and even confusion each time the state did change the charges, which created a trial by ambush. But doesn't that then get the request by the defendant to do away with the speedy trial, the request to have a continuance? No, and that's because of the Williams rule, which creates this additional protection. If initial and subsequent charges were required to be filed by compulsory jointer, then any of the initial continuances sought by defendant on the original charge do not carry over to the subsequent charge. And that's to exactly avoid what happened here. As this court said in People v. Williams, the state should not lull defendant into requesting continuances on lesser charges and then ultimately change charges to a more serious charge. And that's what we have here. So any continuances that defendant requested for second-degree murder would not carry over to the first-degree murder charge, which is why the speedy trial violation occurred immediately when first-degree murder was filed 150 days later. Wouldn't the defense be exactly the same, whether it was because of the strategy employed, self-defense, whether it was first- or second-degree murder? Not necessarily. And that's because there is not only the added burden of if second-degree murder is charged, the state is conceding this mitigating factor. But it's also the fact that once first-degree murder is charged, there's really a myriad of possibilities of what could happen in the case more so than second-degree murder. For example, as what happened here, the second-degree murder instruction could be given without the consent of defense counsel. So Mr. Shockey's counsel believed he was going for essentially an all-or-nothing approach, and that's what he said at the jury instruction conference. He believed he was just offending against first-degree murder to show an affirmative defense of self-defense, which had been timely filed, that affirmative defense. Wouldn't that also be the same defense, though? I think that's the question to the original second-degree pleading. Is that the same defense? It was the same defense, but I believe that the additional possibilities of how the case could proceed created a burden on Mr. The state had conceded a mitigating factor under second-degree murder, which then they did not concede under first-degree murder. And as this court recently said in People v. Ford, first- and second-degree murder are different offenses. They are not interchangeable, and that's even though they have the same elements, second-degree murder is a different offense than first-degree murder. Typically, if the state was upcharging from a lesser-included offense to a greater offense, there would be additional elements. It actually works the opposite way between first- and second-degree murder. Second-degree murder is a lesser-mitigated offense but requires additional showing, the showing of the mitigated factor. And that difference affects how Mr. Stockey's case proceeded and created a trial by ambush. Furthermore, the change in penalties between first- and second-degree murder also negatively affected Mr. Stockey. The whole purpose of the Williams rule is to allow defendant the ability to prepare for his defense, and part of that includes assessing the risks you're facing by going to trial. The second district properly noted in East Theodore Flores that, obviously, first-degree murder has more potential penalty than second-degree murder. The fourth district in this case, People v. Stockey, did not even address this factor. But that's going to be the case no matter how long you have to prepare for trial, right? Yes, upping the ante between first- and second-degree murder, yes, that would always be the case. How does that affect the ability to prepare a defense? It affects what the cost-benefit analysis that defendant's doing as far as going to trial. Essentially, they're anticipating going to trial and assuming the risk of second-degree murder, which is a shorter term of years than first-degree murder, and it also qualifies for day-for-day credit, whereas first-degree murder must be served at 100 percent. So in preparing for trial, you're always weighing the risk of the potential penalty. By changing that risk, making it significantly more serious outside a speedy trial window, that also creates a trial by ambush because defendant was unaware that he would be seeking that potential penalty. Again, the error here happened 150 days after second-degree murder was initially charged. In Jeffries, didn't the court say that the elements are the same and prosecutors have to prove up the same elements? It's only whether or not after they've done that the court decides whether the mitigating circumstances are available. Absolutely. If the state charges second-degree murder, they're conceding the existence of that mitigating factor. So if they up the charge to first-degree murder, they're no longer making that concession. The Second District and East Yard of Flores discussed that. That is a burden placed on defendant, requiring them now to put forth the evidence of the mitigating factor creates a new and additional burden, which indicates that first-degree murder is a new and additional charge. But isn't the presentation of the defense of self-defense, doesn't that always create the possibility that the jury could find an unreasonable belief in that defense? And so that's, again, getting back to the trial by ambush, the defendant was going to present the same evidence anyway, the mitigating factor. You're correct that the second-degree murder instruction is always available when first-degree murder is tried. However, I think it's important to note that the state chose to drop that charge and proceed just on first-degree murder, indicating that they were not seeking that second-degree murder instruction. It's also noteworthy that neither the state nor the defense argued that in their closing that second-degree murder was applicable here. So the state, after the close of evidence, asked for the instruction, and then neither party argued it. So you have a different objection to that than the compulsory joinder argument. Isn't that true? Yes. The compulsory joinder argument, that error is specifically what occurred 150 days later. However, the constant shifting by the state added to the trial by ambush that Mr. Stockey received. And I think it's important to discuss the fact that when defense is seeking an all-or-nothing approach, they're requesting that the jury find self-defense occurred. And that's a pretty straightforward question, is whether or not self-defense occurred. It's a more nuanced question when second-degree murder is on the table, because they're asking whether or not the defendant's conduct was reasonable. So it's possible that Mr. Stockey's testimony would have been presented differently. This all occurred in split seconds. Mr. Stockey was inside a room. Mr. Box began shouting and banging on the door. Mr. Stockey stepped outside that room and then was sucker-punched by Mr. Box before he acted in self-defense. There was also lynch evidence brought in that Mr. Stockey had previously seen Mr. Box sucker-punch someone, and that person was rendered unconscious. So that question of whether or not his conduct was reasonable in that split-second decision-making, there may have been more nuanced questions. It's possible cross-examination of the state's witnesses could have occurred differently. And we also have defense counsel's own statements during instruction that he would have put on the case differently if he'd known he was defending against a second-degree murder instruction. So the fact that there's this additional burden, not just from having to prove the mitigating factor, but also the uncertainty that arises when first-degree murder is charged as opposed to just second-degree murder, that factor weighs in favor of finding that first-degree murder is a new and additional charge. And the additional penalties also weigh in favor of finding that first-degree murder is a new and additional charge. The appropriate remedy here is for this case to be discharged. When first-degree murder was filed outside the speedy trial window, the second-degree murder charge was no longer pending. Therefore, the time-barred second-degree murder charge was no longer pending. So there should have been no trial. The state has the power to charge and withdraw charges, but they must do so within the rule of law. By violating Mr. Stocke's speedy trial rights, they failed to do so here. So Mr. Stocke should be discharged from this case. I would like to briefly discuss my second argument in alternate grounds for remedy, which would entitle Mr. Stocke to a new trial. Mr. Stocke should have been allowed to argue that Mr. Box's abnormal conduct was an intervening cause of his death. The trial court erred in precluding this argument in its motion eliminate ruling. The state argues, and I'm quoting here, that it is irrelevant whether Box's conduct contributed to his own death. And that right-line rule is not supported by the case law. Under the very unique facts of this case, Mr. Stocke should have been allowed to argue the question of causation before the jury. The question of causation... Mr. Stocke was not required to present his own evidence to help assert what essentially was an affirmative defense of lack of causation. But all the... so all the jury knew then that is Box belligerently refused treatment, right? Yes, and that... So how do they get, without an offer of proof, how do they get from there to the fact that somehow the causation was involved as a result of that? Well, the trial court's ruling was that you may not go into causation. So if he had been allowed to go into causation, most likely defense counsel would have asked some additional questions related to causation. And we see questions like that being asked in the cases that are cited in the brief. For example, Keepwell versus Caldwell. Defense counsel was actually allowed to ask in that case whether or not the victim removing themselves from life support, if she had not done that, would she have still been alive? That's an example of defense counsel being able to link up the decedent's actions and causation and indicate that they're an intervening cause. So the fact that they declined to make an offer of proof has no bearing? No, it does not, because the evidence came in through the treating physician's testimony related to Mr. Box's abnormal conduct. And you mentioned Mr. Box took numerous swipes at his treating physician. He also discharged himself from the hospital without the doctor's permission. The doctor would have liked him to either go to a trauma center or to stay for observation. But Mr. Box decided to just check himself out of the hospital. This court has described the natural chain of cause being broken by human action. Most notably in cases of gross negligence or intentional medical maltreatment. That those constitute intervening cause of death and create a valid defense for homicide. Mr. Saki should have been allowed to argue that Mr. Box's intervening conduct was so abnormal it was not reasonably foreseeable, and that it broke the natural chain of causation. So just like a third party's action can create an intervening cause by being so outside the bounds, not just medical maltreatment, but intentional medical maltreatment. Mr. Saki should have been allowed to argue that Mr. Box's conduct was so outside the bounds as to create an intervening cause of death. His conduct was intentional. He swiped at the doctor multiple times. He left without being discharged. Now even without defendant offering up any of their own evidence, this evidence came in through Dr. Day's testimony. And that presented ample evidence to support a causation defense. But because of the trial court's motion in limine ruling, he was not able to ask those questions that would link what Mr. Box's conduct was to whether or not it was an intervening cause. In the other cases before this court... Didn't defense counsel in argument indicate that there was causation in this case? Defense counsel did state that there was causation. Doesn't that waive in itself any claim of error? It does not. Defense counsel immediately filed a post-trial motion preserving this issue. Defense counsel was told on the morning of trial that he was not allowed to go into those issues. So the fact that he didn't make a contrary argument... Well, it was more than not a contrary argument. He agreed there was causation. He agreed there was causation so as to not obtain an objection during closing argument. And then he immediately preserved the issue in his post-trial motion. And again, the court was very firm that he was not allowed to go into the issues of causation. So that question was taken away from him, taken away from the jury to be considered. And the trial court's ruling that they could not go into them prevented Mr. Stotke's counsel from making any arguments during closing, arguing that Mr. Box's conduct was an intervening cause of death. And again, these other cases that are cited in the reply brief are related to sufficiency of the evidence. In those cases, defense counsel was actually allowed to make the arguments that DeSedan's actions were an intervening cause of death. For example, in DeSedan's Fonda Second District case, defense counsel was allowed to argue that in a drug-induced homicide that an overdose was the cause of death. And again, this is a case where time has expired. May it please the court, counsel, assistant attorney general, and on behalf of the people, I'd like to briefly address the issue of causation where my opposing counsel left off. The critical issue here is that the defendant never made an offer of proof of any sort. And I think if you look at the case of Bond, which counsel just referred to, that case shows what such an offer of proof might look like. The issue there was an argument that the victim had made a deliberate act of suicide as an intervening cause of death. The evidence showed that the victim had, on four previous occasions over the past few months, attempted suicide. So there was a critical issue in that case as to whether that was an intervening cause. Here the defendant never made any such offer of proof. He never, even with respect to Dr. Day, he never made an offer of proof as to what cross-examination might bring out in terms of whether this allegedly belligerent behavior had any effect whatsoever on the outcome of his treatment. There's just no evidence in this record that there was any such link between his conduct and the ultimate result here. And really, just the trial court expressly and very carefully limited the court's ruling to requiring the defendant to come up with an offer of proof. And there was no determination here that he could never argue causation, that there never could be an intervening cause. The court only conditioned admission of such evidence on the offer of proof, and the defendant never took that opportunity with respect to even Dr. Day to try to link that up. Turning to the issue of the Speedy Trial Act violation, I first want to address the procedural issue here to clear up the record a little bit. The defense counsel never objected to the first-degree murder charge, the original first-degree murder charge, on any ground whatsoever. The reply brief cites to Volume 9 of the record, where counsel said when the state first proposed filing the amended charge that, well, that might create a problem in terms of our readiness for trial, but we'll wait and see until the charge is filed. Once the charge was filed in the record Volume 10 at 30, defense counsel said on review of the amended charge, we find that there's nothing here that would change our strategy in any way. We're ready to go to trial on this first-degree murder charge. And counsel's concession aside, that was a correct response because the first-degree murder charge had always been embedded in the original second-degree murder charge. The original charge alleged that defendant had committed first-degree murder, and defendant prepared his defense to the second-degree murder charge exactly as he would prepare his defense to the first-degree murder charge. And that is the self-defense, which is a defense to both charges. So as a legal matter, it's clear that there was no surprise in terms of the amendment, but certainly under the facts of this case, when you look at counsel's concession and defense counsel's strategy at trial, there was no question that counsel had adequate notice of the charge and had prepared the self-defense to that charge. So under the facts, at least, we now hear that there was no violation of the notice requirement. And I think in FIPS, this court said that the court should look carefully at the circumstances of each case to see whether the defense had adequate notice. That's fundamentally the question asked by the Williams test, is whether there was notice to prepare the defense. And that was clearly satisfied here. The procedural issue I'd like to stress, because there seems to be a rule that's been developed by the Illinois Appellate Court, which is that any time that there is a statutory speedy trial violation, it's automatically subject to review under the second prong of this court's plain error test. And that's a really problematic rule. I think this case illustrates the sort of incentive that that creates. So here, the defendant never at any point objected to the filing of the first-degree murder charge. The state, having confronted no speedy trial objection, went ahead with that charge and didn't proceed on the second-degree murder charge. Then on appeal, the defendant raised this speedy trial issue, and now he's asking for a drastic remedy of reversal of his conviction and then ultimately immunity to prosecution for his crime. And it's problematic in particular that the only issue here is a statutory speedy trial violation. And the court has recognized that the statutory right and the constitutional right are related, but they're not coextensive. And the speedy trial statute is in some ways much broader than the constitutional right to a speedy trial because it requires such a strict counting exercise in terms of the number of days of delay. So the General Assembly conferred a really broad right on defendants, but it expressly conditioned the exercise of that statutory right on the filing of a pretrial motion to dismiss. And the failure to file that motion was only counsel's first failure to properly preserve this issue. He then also failed to contemporaneously object. And we know that had counsel done that, both the trial court and the prosecutor, who appeared to be entirely unaware of the potential speedy trial objection, could have cured it immediately by, for example, denying Lee to file a first-degree murder charge or at the very least not superseding that charge with only the first-degree murder charge so that the state wouldn't be in the quandary it is now of having no opportunity to prosecute him at all if the court were to find that the speedy trial statutory violation occurred. So I do think the merits of the issue are fairly straightforward, that this was not a new and additional charge and the court should reach that issue. But the court should also address this rule that's been developed in the courts below in terms of the second-pronged plain error because it does create a disincentive really to raising an objection at the time of trial and to exercising the statutory prerequisites to the speedy trial act right. And unless the court has any further questions, we would ask that this court affirm the appellate court's judgment and allow the defendant's second-degree murder conviction to stand. Thank you. Reply. Contrary to the state's argument, a speedy trial violation is so serious that it affects the fairness of defendant's trial and should be reviewed under the second-pronged plain error. The First District, Third, Fourth, and Fifth Districts all hold as much and that's because these cases protect a defendant from being stripped of their liberty for an endless period of time while awaiting trial or from being denied due process of the law. Here, Mr. Stockey's right to speedy trial was violated and this error should be considered. Moreover, the state did not make this argument at the appellate court level that pronged two-plane error is not appropriate review. So they have forfeited it. Part of Williams is closing the loophole of the state violating a defendant's speedy trial rights by upcharging later. And the remedy is drastic because the state has the power to make charges and withdraw charges. Here, they filed a time-barred first-degree murder charge and they chose to dismiss a second-degree murder charge. Therefore, the appropriate remedy is not to be tried again because there were no charges pending when the time-barred first-degree murder charge was filed. Thank you. Thank you. Case number 121755, People v. Stockey, will be taken under advisement as agenda number nine. Ms. Kimmel, Mr. Connell, we thank you for your arguments this morning. You are excused.